1UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA KOZEY, | : | |
| | : | |
| Plaintiff, | : | NO. 3:04CV1724 (MRK) |
| | : | |
| v. | : | |
| | : | |
| VALERIE QUARLES and, | : | |
| FLORA WHITE, | : | |
| | : | |
| Defendants. | : | |

### RULING

In this action, Plaintiff Patricia Kozey sues two employees of the State of Connecticut Court Support Services Division in their individual capacities. Ms. Kozey asserts claims under 42 U.S.C. §§ 1983 and 1988 for violations of her "rights to familial association and for malicious prosecution under the First, Fourth and Fourteenth Amendments to the United States Constitution." Complaint [doc. #1] ¶ 1. Currently pending before the Court is Defendants' Motion to Dismiss [doc. #13] pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. For the reasons explained below, the Court GRANTS Defendants' Motion to Dismiss [doc. #13].

### I.

On a motion to dismiss under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, the Court accepts as true all allegations set forth in the Complaint [doc. #1], *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004), and draws all reasonable inferences in the plaintiff's favor, *ICM Holding Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001). "A complaint should not be dismissed . . . 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Todd v. Exxon*

*Corp.*, 275 F.3d 191, 197-98 (2d Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Without transforming Defendants' Motion to Dismiss [doc. #13] under Rule 12(b) into a motion for summary judgment under Rule 56, the Court may take notice of material that is a matter of public record, *Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004), as well as "documents that, although not incorporated by reference, are integral to the complaint," *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotations omitted). Therefore, the Court will take judicial notice of a motion and an agreement filed in the related state court custody litigation between Ms. Kozey and her ex-husband, which are critical to understanding the mechanics of the deprivation of custody of which Ms. Kozey complains and which are, therefore, integral to Ms. Kozey's Complaint. *See* Motion for Order of Temporary Custody [doc. #139] and Agreement [doc. #140], *Kozey v. Rioux*, No. FA00-0071552S (Conn. Super. Ct. May 15, 2002), attached to Defendants' Motion to Dismiss [doc. #13] as Exhibits C and D. Ms. Kozey has not objected to consideration of these Superior Court filings on the motion to dismiss, and indeed cites to them herself in her Memorandum in Opposition to Motion to Dismiss [doc. #16] at 3.

## II.

The following facts, drawn from Ms. Kozey's Complaint [doc. #1] and the two above-mentioned state court filings, are accepted as true for purposes of the pending motion to dismiss. During 2002, Ms. Kozey was involved in a custody dispute with her ex-husband. Defendants Valerie Quarles, a Family Services Counselor, and Flora White, a Family Relations Supervisor,

were assigned to assist the Milford Superior Court in handling the custody litigation. A guardian ad litem was also appointed to represent the interests of Ms. Kozey's youngest child in the custody battle.

During the course of the custody litigation, on or about April 23, 2002, Ms. Kozey submitted to a urine toxicity test, the results of which were positive for cocaine and opiate compounds. At some time prior to, or concurrent with, the urine analysis, Ms. Kozey attempted to tell Ms. Quarles and her supervisor Ms. White that she had been prescribed, and was accordingly taking, medication to manage pain resulting from cancer and other physical injuries. Ms. Quarles told Ms. Kozey that such information was "unnecessary." Nevertheless, Ms. Quarles, with the approval of Ms. White, reported the results of the urine test to the state court and also reported Ms. Kozey to the Department of Children and Family Services (DCF) for substance abuse and emotional neglect of her youngest child, all without also disclosing the allegedly exculpatory information regarding Ms. Kozey's use of pain medication in connection with her medical treatment.

Ms. Quarles' report to DCF (and Ms. White's approval thereof), set in motion a DCF investigation that terminated in Ms. Kozey's favor in June 2002, when DCF determined that Ms. Quarles' report of substance abuse and neglect was unsubstantiated. On May 15, 2002, the guardian ad litem of Ms. Kozey's youngest child responded to the urine toxicity results reported to the court by filing a Motion for Order of Temporary Custody asking the state court to transfer custody from Ms. Kozey to her parents. *See* Motion for Order of Temporary Custody [doc. #139], *Kozey v. Rioux*, No. FA00-0071552S (Conn. Super. Ct. May 15, 2002), attached to Defendants' Motion to Dismiss [doc. #13] as Exhibit C. It does not appear that any hearing was held on the guardian ad litem's motion. Instead, the Milford Superior Court granted the custody

transfer requested after Ms. Kozey signed an agreement consenting temporarily to relinquish custody of her children to her parents. *See* Agreement [doc. #140], *Kozey v. Rioux*, No. FA00-0071552S (Conn. Super. Ct. May 15, 2002), attached to Defendants' Motion to Dismiss [doc. #13] as Exhibit D.

In September 2002, the Superior Court resolved the overarching custody battle between Ms. Kozey and her ex-husband, awarding Ms. Kozey joint legal and physical custody of her minor children.

### III.

Ms. Kozey brings this § 1983 action for violation of her "rights to familial association and for malicious prosecution under the First, Fourth and Fourteenth Amendments to the United States Constitution." The focus of her claim is that Ms. Quarles (with Ms. White's approval) acted improperly by withholding the exculpatory information regarding Ms. Kozey's use of pain medication in connection with her cancer treatment. Compl. [doc. #1] at ¶ 1. It is not at all clear how the First Amendment bears on Ms. Kozey's claims, and Ms. Kozey's brief does not make any arguments founded upon the First Amendment. The Court concludes that Ms. Kozey has abandoned any First Amendment claim asserted in her Complaint. Therefore, the Court interprets the Complaint to state just two claims: one for malicious prosecution and violation of the Fourth Amendment; and another for violation of Ms. Kozey's substantive due process right to familial association. The Court analyzes each of these claims in turn.

A.      **Malicious Prosecution**[1]

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Under Connecticut law, a plaintiff must prove: (1) that the defendants initiated or procured the institution of proceedings against the plaintiff; (2) that the proceedings have terminated in favor of the plaintiff; (3) that the defendant acted without probable cause; and (4) that the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. *See Shea v. Chase Manhattan Bank N.A.*, 64 Conn. App. 624, 628-29 (2001) (citing *DeLaurentis v. New Haven*, 220 Conn. 225, 248-53 (1991)).

In *Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004), the Second Circuit considered whether a civil proceeding (in fact, a civil administrative proceeding) could form the basis of a § 1983 claim founded on malicious prosecution.   The Second Circuit began by observing that

> because civil proceedings do not implicate the same constitutional rights as criminal proceedings, the mere fact that New York state law recognizes a civil tort of malicious prosecution did not transform plaintiff's claim of civil malicious prosecution 'into a constitutional cause of action' redressable under § 1983.

*Id.* at 315 (quoting *Easton v. Sundram*, 947 F.2d 1011, 1017 (2d Cir. 1991)).  The Court went on to explain that the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994) had

---

[1]  Defendants suggest, and Plaintiff concedes, that under Connecticut law the suit alleged is properly termed "vexatious suit" rather than "malicious prosecution" since the underlying actions involve civil, not criminal, proceedings. *See* Defs.' Mem. of Law in Support of Mot. to Dismiss [doc. #14] at 19, n. 4; Pl.' s Mem. in Opp. to Mot. to Dismiss [doc. #16] at 9, n.1. However, as both parties concede, the elements are identical. *Id.* For clarity, the Court will therefore adhere to the malicious prosecution language used in the Complaint.

changed the "landscape of § 1983 malicious prosecution claims" by making it clear that "only those claims of malicious prosecution that implicate[] Fourth Amendment rights were appropriate bases for malicious prosecution claims brought under § 1983." *Washington*, 373 F.3d at 316 (citing *Albright*, 510 U.S. at 273)). Accordingly, the Second Circuit held that to sustain a § 1983 malicious prosecution claim, "there must be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington*, 373 F.3d at 316 (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995)).

*Washington* involved a claim by plaintiffs that defendants had improperly initiated administrative disciplinary proceedings against the plaintiffs because of their race and prior opposition to defendants' allegedly discriminatory practices. The Second Circuit held that such a civil administrative proceeding could not support a § 1983 malicious prosecution claim because plaintiffs "were never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment." *Washington*, 373 F.3d at 316. This was so even though the plaintiffs could have been (though were not) criminally prosecuted for the conduct that formed the basis of the disciplinary proceedings and had been suspended from their jobs without pay for 30 days. *Id.*; s*ee also Singer*, 63 F.3d at 116 (plaintiff in a § 1983 malicious prosecution case must show some deprivation of liberty consistent with a seizure); *Easton*, 947 F.2d at 1017 (noting that criminal malicious prosecution typically implicates constitutional rights, such as a deprivation of liberty, which are not present in a civil prosecution). While the Second Circuit would not rule out the possibility that a § 1983 malicious prosecution claim could be founded on a civil or administrative proceeding, "because such claims must, under *Albright* and *Singer*, be premised on a violation of Fourth Amendment rights, it is unlikely that a civil

6

proceeding of the kind at issue here would implicate constitutional rights in a manner that would warrant redress under § 1983." *Washington*, 373 F.3d at 317.

Key to the evaluation of Ms. Kozey's § 1983 malicious prosecution claim is identification of the particular proceeding alleged to have been improperly initiated by Ms. Quarles (with the approval of Ms. White), and as a consequence, to have led to the type of Fourth Amendment violation specified in *Washington*. Based on the facts in the record, the Court has identified three proceedings – conflated in the Complaint and Ms. Kozey's brief but distinct in origin and effect – that bear on Ms. Kozey's claim. The Court will consider each of these proceedings in turn.

1.   The *Kozey v. Rioux* Custody Suit

The first proceeding that can be identified from the record is the overarching custody action between Ms. Kozey and her ex-husband, which was resolved favorably to Ms. Kozey in September 2002. This proceeding was already well underway when Ms. Quarles made the report of neglect objected to by Ms. Kozey, and therefore, Ms. Kozey properly makes no claim that this proceeding was initiated by Ms. Quarles or her report to the court or DCF regarding the results of the urine test. The initiation and ultimate resolution of the custody suit are therefore not relevant to her malicious prosecution claim. The Court describes the suit here solely in the interests of clarity.

2.   The Custody Transfer Proceeding

The second proceeding mentioned in Ms. Kozey's Complaint involves the guardian ad litem's Motion for Order of Temporary Custody, filed in the course of the *Kozey v. Rioux* custody suit. Ms Kozey has standing to assert the Fourth Amendment rights of her son, and the

7

Court is willing to assume for purposes of this case that his temporary transfer to her parents' custody as a result of the guardian ad litem's motion in the underlying custody proceeding would satisfy the Second Circuit's requirement that a § 1983 malicious prosecution plaintiff have been "taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment." *Washington*, 373 F.3d at 316.  Even assuming, however, that the transfer motion proceeding satisfies the Second Circuit's requirements in *Washington* and that Ms. Quarles' failure to report exculpatory information in connection with the urine analysis test caused the guardian ad litem to initiate the temporary transfer motion, her claim based upon the temporary custody transfer motion fails as a matter of state law.

In the first place, it is far from clear that the mere filing of a motion to transfer custody, on which no hearing or other proceeding is held in the Superior Court, constitutes a "suit" or "prosecution" for the purposes of Connecticut's law on malicious prosecution or vexatious suit. Certainly, Ms. Kozey cites no state case law to support such a proposition.  In any event, the Court need not resolve this question, because the voluntary agreement to modify custody into which Ms. Kozey entered with the guardian ad litem, *see* Agreement [doc. #140], *Kozey v. Rioux*, No. FA00-0071552S (Conn. Super. Ct. May 15, 2002), does not constitute a favorable disposition of that motion under Connecticut law. *See, e.g., Russo v. City of Hartford*, 184 F. Supp. 2d 169, 186 (D. Conn. 2002) (favorable termination prong of a malicious prosecution claim requires that prior action have been terminated without any adjudication against, or settlement requiring consideration from, the vexatious-litigation plaintiff) (citing *DeLaurentis v. City of New Haven*, 220 Conn. 225, 250-52 (1991)).  As a result, any § 1983 malicious prosecution claim founded on the guardian ad litem's custody transfer motion fails as a matter of law on the favorable termination prong of the state law malicious prosecution inquiry.

3. <u>The DCF Investigation</u>

The final proceeding featured in Ms. Kozey's Complaint is a DCF neglect investigation. This administrative proceeding was apparently launched by DCF in response to the report of neglect made by Ms. Quarles with Ms. White's approval. Assuming (without deciding) that a DCF neglect investigation can form the basis of a malicious prosecution or vexatious suit claim under Connecticut law, it is clear that this investigation does satisfy the favorable termination element of state law. For, on June 22, 2005, DCF determined that Ms. Quarles' complaint was unsubstantiated. *See* Compl. ¶¶ 10, 26.

However, any § 1983 malicious prosecution claim based on the initiation and pendency of the DCF administrative investigation fails for the same reasons identified by the Second Circuit in *Washington*. For the initiation of the DCF investigation did not lead to either Ms. Kozey or her child ever being "taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment," as required by the Second Circuit. *Washington*, 373 F.3d at 316. While the temporary removal of Ms. Kozey's child from her custody as a result of her settlement with the guardian ad litem in the custody suit might satisfy the requirements of *Washington*, Ms. Kozey has alleged no facts in her Complaint connecting the removal of her child to the DCF investigation. To the contrary, the state court filings of which this Court has taken judicial notice show that the temporary transfer of custody to her parents was effected not by DCF, but rather upon motion of the guardian ad litem (who is not an agent of DCF), and with the agreement of Ms. Kozey. *See* Motion for Order of Temporary Custody [doc. #139] and Agreement [doc. #140], *Kozey v. Rioux*, No. FA00-0071552S (Conn. Super. Ct. May 15, 2002), attached to Defendants' Motion to Dismiss [doc. #13] as Exhibits C *& * D. Particularly in the face of these judicial pleadings, Ms. Kozey's conclusory allegation that her

son was removed from her custody "as a result" of the DCF investigation, Compl. ¶10, is insufficient to sustain her claim even on a motion to dismiss, *see Keating v. Carey*, 706 F.2d 377, 392 n.2 (2d Cir. 1983) ("[T]his Circuit has consistently held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' cannot survive a motion to dismiss.") (citation and quotation marks omitted). Because the pendency of the DCF investigation did not result in a seizure or other deprivation of liberty sufficient to constitute a violation of Ms. Kozey's Fourth Amendment rights, her § 1983 malicious prosecution based on the DCF investigation fails as a matter of law. *See Washington*; 373 F.3d at 317, *Singer*, 63 F.3d at 116; *Albright*, 947 F.2d at 1017.

To summarize: neither the DCF investigation nor the custody transfer proceeding individually satisfy all the elements of a § 1983 malicious prosecution claim, and Ms. Kozey's conclusory conflation of the two proceedings, *see*, *e.g.*, Compl. ¶ 10, is inadequate to remedy this deficiency, even on a motion to dismiss. Indeed, even if Ms. Kozey had alleged facts demonstrating that the DCF investigation caused the guardian ad litem to file for custody modification, she would still confront the insuperable obstacle that the only proceeding that actually implicated the Fourth Amendment, the custody transfer proceeding, did not terminate in her favor.

B.     **Substantive Due Process**

Ms. Kozey further alleges that Ms. Quarles' report led to the violation of her right to familial association under the substantive due process prong of Fourteenth Amendment. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523

U.S. 833, 843 (1998). To the extent that Ms. Kozey's substantive due process claim is based on the temporary removal of her child in connection with the guardian ad litem's motion for an order of temporary custody, her substantive due process claim is "covered," and therefore preempted, by her Fourth Amendment malicious prosecution claim, discussed above. *See id.* ("Substantive due process analysis is . . . inappropriate . . . if [the] claim is 'covered by' the Fourth Amendment."). By contrast, Ms. Kozey's allegation based upon the initiation of the DCF investigation is not "covered" by the Fourth Amendment because, as discussed above, the DCF investigation did not result in the removal of Ms. Kozey's child from her custody.

Nevertheless, although the rights protected by substantive due process are broad, the standard for proving their breach is correspondingly strict. As this Court recently explained in *Radolf v. University of Conn.*, 364 F. Supp. 2d 204, 227 (D. Conn. 2005) "[s]ubstantive due process does not protect 'against government action that is incorrect or ill-advised,' " (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). The Second Circuit has stated that "the protections of substantive due process are available only against egregious conduct which . . . can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (internal quotation marks omitted). Accordingly, the cases in which courts have recognized a viable substantive due process claim are limited to those presenting extraordinary circumstances.

Given the very high standard courts have consistently used in evaluating substantive due process claims, this Court has little difficulty concluding here that Ms. Kozey's claim fails as a matter of law. Even if Ms. Quarles and Ms. White were reckless in their failure to report to DCF or the state court the exculpatory information suggested by Ms. Kozey, the positive test results (which Ms. Kozey does not contest) provide a more than adequate basis for Defendants' actions.

Furthermore, neither the neglect report nor the DCF investigation themselves could affect Ms. Kozey's rights or the custody of her child without an opportunity for judicial review. *See* Conn. Gen. Stat. 46b-7 (providing that where a family relations investigation has been ordered "the case shall not be disposed of until the report has been filed . . . and counsel and the parties have had a reasonable opportunity to examine it prior to the time the case has been heard."); *see also* Conn. Practice Book § 25-60(c) (1998) (family relations officer's report admissible in evidence "provided the author is available for cross-examination."). Therefore, Defendants' filing of a materially incomplete abuse report does not rise to the level of conduct "so shocking, arbitrary, and egregious as to violate [Ms. Kozey's] substantive due process rights." *Anthony v. City of New York*, 339 F.3d 129, 143 (2d. Cir 2003) (internal quotation marks and citation omitted). Accordingly, Ms. Kozey's Fourteenth Amendment claim fails.

### IV.

Defendants' Motion to Dismiss is GRANTED.  **The Clerk is directed to close this file.**


IT IS SO ORDERED,


/s/      Mark R. Kravitz
United States District Judge


**Dated at New Haven, Connecticut: September 28, 2005.**